**UNITED STATES**

v.

**Willie COLEMAN, Seaman Apprentice,
U.S. Coast Guard.**

**CGCM 0017.
Docket No. 917.**

U.S. Coast Guard Court of
Military Review.

6 April 1989.

Trial Counsel: LCDR James J. Vallone, USCG.

Defense Counsel: LT N.E. Grasselli, USCG.

Appellate Government Counsel: CDR R.T. Buckingham, USCG.

Appellate Defense Counsel: LCDR James Collin, USCG.

Before BAUM, BARRY and GRACE, Appellate Military Judges, Panel Two.

BAUM, Chief Judge:

Appellant has assigned as error an issue raised and resolved against him at trial in a motion to suppress a pretrial statement. In this regard, unconditional pleas of guilty are considered to waive further litigation of issues such as this one. R.C.M. 910 and M.R.E. 304(d)(5), Manual for Courts–Martial, 1984. Appellant contends, however, that the following exchange at trial, while lacking the express government consent required by Rule for Courts–Martial 910(a)(2), was the functional equivalent of a conditional guilty plea:

> MJ: Mr. Grasselli, have you waived any motions as a result of this pretrial agreement?
>
> DC: Your Honor, we have waived no motions.

Record of trial at 156.

We disagree with the conclusion appellant would have us draw from this question and answer. The judge at that point in the trial was inquiring into the terms of the pretrial agreement. In the process, he asked

whether the defense had agreed to forgo making any motions as part of the plea bargain. Defense counsel answered that none had been waived and, in truth, defense had already made his motion to suppress the accused's pretrial statement to Coast Guard special agents, which was fully litigated and denied by the judge. Thereafter, the accused entered guilty pleas and, upon inquiry by the judge, confirmed the unconditional nature of his pleas as follows:

> MJ: Seaman Apprentice Coleman, earlier, you, through your Defense Counsel, made a Motion to Suppress the statements given to Special Agent Huggins and Special Agent Klinner, and I denied that motion.
>
> By pleading guilty, you waive the right to appeal that issue. Do you understand that?
>
> ACC: Yes, sir.

Record of trial at 150.

Further challenge of the judge's ruling denying the motion to suppress evidence and review by this Court of that denial have been waived by appellant's unconditional pleas of guilty. Accordingly, appellant's assignment of error is rejected for that reason.

■ Based on appellant's pleas, he was found guilty of specifications alleging aggravated arson; damage and destruction of government property; loss of government property; indecent language to a female; and unauthorized absence in violation of Articles 126, 108, 134 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 926, 908, 934, 886. The sentence, as approved by the convening authority, includes a dishonorable discharge, confinement for two years and reduction to E–1. In fulfillment of our responsibility under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, with respect to the sentence, we note that Rule for Courts–Martial 1003(b)(10)(B), Manual for Courts–Martial 1984 sets out as guidance that, "[a] dishonorable discharge should be reserved for those who should be separated under conditions of dishonor...." While the offense of aggravated arson alone could prompt such a discharge,

depending on the facts, the circumstances surrounding the charge in this case do not warrant that characterization. Here, the offense was consummated when the accused in an intoxicated condition set fire to a bulletin board as an act of vandalism. The fire was rapidly extinguished, resulting in damage only to the bulletin board and several ceiling tiles.

This offense falls within the Uniform Code of Military Justice's definition of "aggravated arson" because two particular elements have been satisfied by the guilty plea, that there was a human being in the structure at the time and that the accused knew a human being was there. Otherwise, the offense would be "simple arson." While the finding here technically meets the Code's requirement for "aggravated arson", Judge Grace and I do not consider the offense to be aggravated in the normal sense of the word from the limited facts developed at trial. Judge Barry would not even find the technical requirement for aggravated arson satisfied. Based on appellant's responses during the plea providence inquiry, Judge Barry would reject appellant's plea of guilty to that offense. Judge Grace and I consider the trial judge's inquiry to be minimally sufficient for acceptance of the plea and justification for the finding of guilty, but we certainly do not deem the offense serious enough to warrant a dishonorable discharge.

■ In light of all matters relating to the offenses and this particular first offender, Judge Barry and I believe a lesser period of confinement is more appropriate. The remaining offenses consisted of the multiplicious specifications of destruction of the bulletin board and damage to the ceiling tiles; specifications of: damaging a government trash can, damaging a fire extinguisher, negligently losing a barracks room key, communication of indecent language to a female seaman, and a 2 hour and 55 minute unauthorized absence. While these offenses, along with the arson offense, clearly constitute bad conduct, we do not believe they call for a dishonorable discharge and two years confinement. Accordingly, the findings of guilty and only

so much of the sentence as approved below, as provides for a bad conduct discharge, confinement for eighteen months and reduction to E-1 are affirmed. All rights, privileges and property of which the accused has been deprived by virtue of the mitigated sentence shall be restored.

GRACE, Judge (Concurring in part and dissenting in part):

I concur with Chief Judge Baum in all respects save the reduction in confinement. I would affirm the findings of guilty and only so much of the sentence as provides for a bad conduct discharge, confinement for two years and reduction to E-1.

BARRY, Judge (Concurring in part and dissenting in part):

I concur with the disposition of this case with the exception that, with respect to the arson offense, I would approve a finding of guilty only for simple arson.

The military judge and counsel made largely successful efforts to assist the accused and to "save" the guilty plea and the plea agreement, despite the fact that in response to the military judge's questions during the providency inquiry the accused frequently gave the "wrong" answer, or an answer which was not responsive. Indeed, it appears the accused had difficulty understanding some questions, for he was able to correct the non-responsive answers on further questioning.

However, with regard to the arson offense, I find inadequate basis to support the conclusion that the accused knew there was a human being in the structure (Building "B") at the time he set fire to the bulletin board. First, he twice responded "No, sir" to questions which would have established his knowledge that there were people in the building at the time he set the fire. He then stated in his own words "I didn't have no knowledge of nobody was there" [sic]. (Record of trial at 116–119).

After a recess, and a meeting between the judge and counsel in chambers, the accused again denied knowledge several times stating for example, "It wasn't a barracks, but there *could* have been somebody in the building. *I don't know*" (em-

phasis supplied). The accused's next response to the question "was there anybody in the building?" was "I didn't see anybody, sir. There could have been some people in *this* building *here*, sir." (Record of trial at 125).

An obviously confused military judge then attempted to identify *"this* building *here"* also as building "B", which the accused said it was. The judge then established that there were watchstanders "in building B" which the accused referred to as "the radioman *down here."* (Record of trial at 126) (emphasis supplied). It was at this point, that the military judge for the first time advised the accused regarding the element that the accused had to know there was a person in the structure at the time he set the fire (his initial advice had been for aggravated arson to a *dwelling* rather than a structure, and had not included this element). He again asked the accused if there was a human being inside the building. The accused said "Yes, sir." "Who?" asked the Judge. "In an *adjacent* building" (emphasis supplied) responded the accused. (Record of trial at 127). Finally, the accused gave what the military judge perceived as the "right" answer:

Q. You set fire to the bulletin board that could have set fire to the building?

A. Yes, sir.

Q. *That* building encompassed the Radio watch stander?

A. Yes, sir.

Record of trial at 128–29 (Emphasis supplied).

At this point the military judge moved to other offenses.

Normally in a plea agreement case such as this, the correct "Yes, sir" response when finally elicited brings a sigh of relief to all parties, including appellate judges, and the issue is resolved. In this case, however, the accused, when his responses were in his own words, clearly evidenced his firm conviction that he did not know if anyone was present in the building—at best he said "there could have been" someone present. In light of these responses, I am unable to conclude that the "right"

answer has been elicited, when the question itself is ambiguous (refers to "that" building when "this" building and "that" building were at issue), and the accused had only admitted to the *possibility* of a watchstander in *"this* building *here"*.

Having concluded that the most serious offense cannot stand, reassessment of the sentence is necessary. On reassessment, and evaluating the entire record, I join with Chief Judge Baum in approving only so much of the sentence as provides for a bad conduct discharge, confinement for eighteen months and reduction to E–1.